PROCTOR *vs.* FARNAM.

Where mortgaged premises were sold under a decree of the court of chancery, and the purchaser being unable to raise the money immediately, and being informed by M. that the U. & S. Rail Road Company intended to take the premises for a depot, and that the damages would be appraised without reference to the increase of the value of the land by the location of such rail road, assigned his bid to M., who was the solicitor for the complainant in the foreclosure suit, and assumed the payment of such bid, and such original purchaser afterwards sold and assigned his bid, a second time, to other persons for a considerable advance; *Held,* that M., the first assignee of the bid, was entitled to a conveyance of the premises, from the master.

A purchaser at a master's sale, under a decree of the court of chancery, may make a valid transfer of his bid to a third person, before the execution of the master's deed for the premises. And the court, upon the application of such assignee, may direct the execution of a conveyance immediately to him, by the master; subject to the equitable rights or liens of other persons, as against the original purchaser, which had become vested previous to the assignment of his bid.

March 15. THIS was an appeal from a decretal order of the vice chancellor of the fifth circuit. The question arose upon the sale of mortgaged premises in a foreclosure suit; and notice had been given by the mortgagor of an application for a resale. That application had not been finally disposed of when the decretal order, from which this appeal was taken, was entered, but it was ultimately refused. At the sale of the premises by the master, the same were bid off by J. Fay, the appellant, for $1007; but as the purchaser was not able to raise the money immediately, the master gave him a day or two to comply with the terms of the sale, which time was afterwards extended. While the purchaser was endeavoring to borrow the money to pay the bid, he ascertained that the Utica and Schenectady Rail Road Company would probably take the lot for a depot. He was also informed, that by the act of incorporation, the company would have the right to take it, upon an appraisement, and that the principle upon which such appraisals were made, was the value of the property, without reference to the increase of such value by the

location of the rail road at that place. He thereupon applied to C. A. Mann, who had previously offered to take his bid, to know whether such was the law, and whether the company intended to take this lot. Mann told him that such was the law, and that he understood that the company intended to take that lot for the accommodation of their rail road. The purchaser thereupon gave to Mann an assignment of his bid, and Mann, who was the solictor for the complainant in the foreclosure suit, agreed to save him harmless, or to indemnify him against any claim upon him on account of his having bid off the premises at the master's sale. Fay was afterwards advised that the company had no right to take the lot; and that, if they took it, the value of the land, independent of its increased value by the location of the rail road there, was not the legal rule of damages; and he subsequently sold his bid for a considerable advance. The master having declined to execute the deed, except under the direction of the court, Mann made an application to the vice chancellor, for the purpose of obtaining an order to have the master's deed made out to him, in conformity with the assignment to him from Fay. The application was opposed by Fay, but was granted by the court, without prejudice to the application which was then pending on the part of the mortgagor for a resale. From this decretal order, the defendant Fay appealed to the chancellor.

The following opinion was delivered by the vice chancellor, upon making the order appealed from :

DENIO, V. C. The counsel for Fay, the purchaser, objects to being made liable to the jurisdiction of the court, in the summary manner adopted by the petitioner, and insists on the rights which all persons have, in general, of being heard by formal allegations and proofs in the ordinary course of justice, where important interests claimed by them are brought into discussion. The petitioner likewise thinks himself aggrieved, by being met by the affidavit of the purchaser, taken *ex parte*, without an opportunity afforded him to controvert them. The answer to the complaints on both sides is, that these par-

ties, Fay by becoming the purchaser under the decree, and the petitioner by undertaking to substitute himself for the purchaser, have respectively made themselves parties to the original suit, in a certain sense, so far at least as to subject them to this form of proceeding. It is a familiar principle that any one who interferes *pendente lite* with the subject matter of a suit in equity, submits himself to the jurisdiction of the court, to be exercised by petition or motion in the original suit, and that he acquires no rights in that manner which may not be modified, controlled or directed, without any new proceeding directly against him; and this doctrine applies with full force to this case of a purchaser under the decree, and to all who claim interest under him. (*Requa v. Rea*, 2 *Paige's Rep.* 341.)

It is further objected, on the part of Fay, that the decree directs the master to make the conveyance to the purchaser, as highest bidder, and that it is not the practice of the court to interfere with his duties; and that especially the court will not do so, where it would change the effect of the decree. I find, however, that it has been the practice of the English chancery to admit, under certain circumstances, the substitution of another person for the purchaser; and such orders have, upon several occasions, been made in this circuit, since I have been in office, in cases where no objection was made. (*Rigby v. M'Namara*, 6 *Ves.* 515. *Vale v. Davenport, Idem,* 615.) I see, therefore, no objection to the making of the order asked for, arising out of the manner in which the matter is brought before me, or the nature of the relief sought. But it is further objected, that the consent of Fay, as set forth in the instrument produced, is not a valid transfer; or at least, that it is revocable in its character, and that he now wishes to revoke it. And it is also insisted, that it was obtained by misrepresentations as to the situation and value of the premises which he had purchased. The instrument executed by Fay to Mann recites that the former was unable to fulfil the conditions of the sale, and it professes to be a conveyance of his interest in the subject, for a valuable consideration. The election spoken of, in the request to the master, does not refer to any contingency upon which Fay should be reinvested with

1836.

Proctor
v.
Farnan.

the right he had parted with, but to a doubt whether Mann would think it advisable to avail himself of the right which he had acquired. It is admitted that a concurrent parol understanding was given by Mann, that he would, at all events, save Fay harmless from the consequences of the transaction. I do not think that the transaction should be tested by the ordinary rules relating to the transfer of real estate. A transfer made upon good consideration, intended to be absolute, and not conditional, is all that seems to be required. But if those rules did apply, I think the instrument in question might be safely tested by them. The statutory provision, (2 *R. S.* 135, § 8,) requiring certain contracts to be in writing, and that the consideration should be expressed, does not embrace such contracts, when under seal ; and that provision, as well as the one relative to certain rules of evidence, (2 *R. S.* 406, § 77,) relates only to executory agreements, and not to those which operate by passing an estate or interest. Besides, if the consideration could be inquired into, the undertaking to exonerate Fay would be sufficient to support the instrument. *See Jackson* v. *Schoonmaker,* (2 *John. Rep.* 230,) as to the manner in which the consideration may be stated in a deed. I am therefore of the opinion that the agreement and assignment constituted a valid absolute transfer, and not a conditional, or revocable one ; and that it ought to be carried into effect, if fairly obtained.

It was, however, as is alleged, obtained by unfair practices. At the time when Fay applied to Mann, the former was, so far as we know, utterly unable to comply with the conditions of his bid. He was liable to be proceeded against by attachment for not doing so ; and under such circumstances he could not have required much persuasion to consent that the bid should be taken off his hands. The representations alleged to have been made by Mann are, that the rail road company designed to take the lot for their purposes, at an appraisal ; that the damages would be estimated without reference to the enhanced value occasioned by the locating of the road ; and that they had a right thus to take it. If this information was untrue, whether from design or mistake, on the part of the pe-

1836.

Proctor
v.
Farnan.

titioner, I would not enforce the agreement to substitute him as the purchaser. There is no evidence, one way or the other, whether the lot is so situated, in respect to location, that it may be taken for the track of the road, or for the depot of the company. In either case I apprehend that the company might enter upon it, and in case of disagreement with the owner, concerning the price, might procure an appraisement, according to the provisions of the charter. The language of the seventh section, (*Laws of* 1833, *p.* 465,) is, that the company may enter upon and take possession and use all such lands and real estate as may be indispensable to the construction and maintenance of said double rail road or ways, and the accommodations requisite and appertaining unto them. If this lot is so situated as to be a convenient location for the buildings usually erected at the termination of a rail road for the sheltering of their carriages and apparatus, which as I understand is an indispensable accommodation, and is what is meant by a depot, I cannot see why it is not embraced within the provision in question. By the same section, the lands are to be appraised at what the commissioners deem to be the full value of them ; and where lands are necessarily taken for the construction of the road, as erections connected with it, the recompense should be, not what they would be worth provided they were not taken for the road, but were so situated in regard to the road as that the value would be enhanced by its construction—but the fair worth of them, independently of that circumstance. It does not appear but that the account given by Mann, of the value of the lot before the road was located, was in all respects correct ; at any rate, Fay had the same means of judging which Mann had, and he cannot pretend that he was deceived upon that point. Nor is Mann responsible for what was said to Fay by Clark, or the other persons named.

Upon the whole, I cannot say, upon these papers, that there was any thing untrue or unfair in the representations made by the petitioner. And if his bargain with Fay was a fair one, the subsequent transaction with Thorn and Curtis was void, for the want of any right or interest remaining in Fay upon which to contract with them. I am therefore of opinion

that Mann should be substituted for the purchaser, at the master's sale.

*B. F. Cooper*, for the appellant.

*C. A. Mann*, the respondent, in person.

THE CHANCELLOR. The law of this case is so fully and correctly laid down in the opinion of the vice chancellor, that it is only necessary for me to say that I concur with him in the conclusion at which he arrived, and in the reasons upon which that opinion was founded. It is not pretended on the part of the appellant that it was not true, as he was told by Mann, that the rail road company intended to take the lot for the necessary accommodation of the rail road; and the statute gave them the right to take it for that purpose. Neither is it alleged that the amount bid was not the full value of the lot, under the circumstances, or at least what both parties supposed to be its full value at the time the appellant made a legal and valid transfer of the bid to Mann; although, for some reason which is not disclosed in these papers, Thorn and Curtis subsequently supposed they could make a good speculation upon the lot by paying an increased price beyond the bid. Their conduct in attempting to purchase into this litigation, may perhaps be accounted for from the fact stated in the affidavit of the appellant—that certain citizens of Utica had agreed to pay the necessary expense of procuring the lot for the use of the company; and that it was expected, from that circumstance, a greater sum might be obtained, by a compromise with those citizens, to prevent litigation and expense. Whatever may have been their motives, Fay had parted with all his interest in his bid, by a legal and binding assignment thereof, and they probably knew of it before they attempted to purchase his right. Whether they did or not, the maxim that he who is first in time is strongest in right, is applicable to this case and must prevail.

It is the constant practice of this court to permit the purchaser at a master's sale to assign his bid, and to direct the conveyance to be made to the assignee; without prejudice,

however, to any equitable rights or liens of third persons as against the original purchaser, which may have become vested before such assignment of his bid. In the state of Kentucky, it has recently been decided that even a sheriff's deed may be given to an assignee of the purchaser, so as to give the substituted purchaser the legal title to the premises. (*Frizzle* v. *Veach,* 1 *Dana's Rep.* 211.) It is not necessary to inquire whether such would be the legal effect of a sheriff's deed to a substituted purchaser here ; but this court will always protect the equitable rights of parties, by directing the conveyance to be made to the assignee.

The order appealed from must be affirmed, with costs.