JOHN J. KNOX, COMMISSIONER, &c., PLAINTIFF IN ERROR, vs. WILLIAM B. BARNETT, DEFENDANT IN ERROR.

1. Where, by consent, there is a trial by the court, a motion for new trial upon the ground that the finding was contrary to the law and evidence overruled, and exception thereto, this court, upon a writ of error, is authorized and required by Chapter 521, Laws, and other statutes, to review such action overruling the motion for new trial and to examine the evidence.

2. Where a general agent having a power to sell a piece of land, limited only in the method of payment, and the agent having control of the rents of a building on the land, upon a sale of the land at public sale announces, in the presence of a tenant, that the purchaser, after a named date, shall be entitled to the rents, and the special agent, upon a payment for a part of the time to the purchaser, expresses approval of it, the principal is estopped from claiming rent paid to such purchaser by such tenant.

Writ of Error to the Circuit Court for Duval county. The facts of the case are stated in the opinion.

*Geo. Wheaton Deans* for Plaintiff in Error.

*Cockrell & Walker* for Defendant in Error.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

In this case there was a trial by the court by consent, a finding for the defendant, a motion for new trial, motion overruled, exception thereto, and judgment for the defendant.

The grounds of the motion for new trial were, that the finding of the court for the defendant was contrary to the evidence and to the law as applicable to the evidence.

The first question presented, while we think it is one easy of solution and determined with little difficulty, is of great importance as a matter of practice, and deserves, and has received at our hands, careful consideration. That question is whether, where by consent the trial is by the court, this court can upon motion for new trial, upon the grounds stated being overruled and exceptions thereto, review the action of the court in this respect upon a writ of error.

The Supreme Court of this State, like the Supreme Court of the United States, and some, not all, of the State courts, anterior to the statute of 1853, Chap. 521, Laws, held that

the granting of a new trial upon a general review of the facts as shown by the evidence, as distinct from a special verdict of the jury, or case with findings of fact, or agreed statement of facts, embracing the conclusions of fact found as distinct from the evidence of the facts, was a matter of discretion in the court, which the Appellate Court would not review. See, however, on this subject, Gibson vs. Land, 27 Ala., 126. Whether properly or improperly it is not for us to say, but in 1853 the Legislature, to remedy this evil supposed or actual, enacted that "all orders and judgments of the Circuit Courts of this State made and passed in any cause therein, wherein the said courts shall allow and grant, or shall refuse to allow and grant, any motion for new trial, or any motion to amend the pleadings, or to file new and additional pleadings, or to amend the record of any cause during the term in which it was determined, or shall refuse to allow and grant a motion for continuance of the cause, shall and may be assigned for matter and cause of error upon any writ of error sued out or appeal taken to the Supreme Court, and the said Supreme Court shall hear and determine the matter so assigned for error in the same manner and under the like rules and regulations as in other cases." At the date of this enactment the first section of an act entitled "An act to amend an act regulating judicial proceedings, approved November 23, 1828, approved November 21, 1828," provided that when both parties in action at law agree to a trial without a jury, the judgment shall be as effectual as upon verdict. These statutes are remedial in their character and should be liberally construed. The language is broad. "All orders of the Circuit Court" refusing "to allow and grant any motion for new trial shall and may be assigned for matter and cause of error."

This language embraces a trial by the court, as there is

no doubt that a motion for new trial is equally applicable to such trial by the court as to a trial by the jury. Indeed the Supreme Court of the United States when holding, in the absence of legislation authorizing it, that upon a writ of error the evidence before the court, in a trial by the court after motion for new trial, will not be reviewed, states that the remedy is a motion for new trial before the court of original jurisdiction. We have examined all the cases upon the subject in the Supreme Court of the United States. There is no act of Congress similar to our acts of the Legislature, and the cases are therefore precedents not applicable here.

We think there is no doubt of our power and duty to review the evidence before the Circuit Court upon exception to this order refusing a new trial, where the motion for the new trial was upon the ground that the finding was contrary to the evidence and to law.

The only other question in the case is whether the finding of the court was of such character, when examined in reference to the evidence, that the motion for new trial should have been granted. How was the finding in this respect? We think it was entirely conformable to the evidence.

This was an action of assumpsit by Knox against Barnett to recover a sum of money alleged to be due him, Knox, Comptroller of the Treasury of the United States, as Commissioner of the Freedman's Savings and Trust Company, for the use and occupation of banking rooms in the Freedman's Bank building, for the months of April, May and June, A. D. 1880, which has been paid to the purchaser.

The evidence shows that L. W. Spratt became the purchaser of the building in which these rooms were, at a sale had on the 25th of March, A. D. 1880; that W. H. Lock-

wood, the agent of the Commissioner, had a general author-
ity to sell, being limited in the matter of the manner of
payment by the purchaser to " one-fourth cash, balance in
six, twelve and eighteen months, at eight per cent. interest
per annum, payable semi-annually until paid, or all cash at
the option of the purchaser, the deferred payments, if any,
to be secured by deed of trust, or mortgage on the prem-
ises sold."

The agent, W. H. Lockwood, advertised the property
for sale, stating the terms as to time and amount of pay-
ments as authorised by the letter of the Commissioner, con-
cluding the advertisement with the statement, that : " For
further information apply to J. C. Greeley, President Duval
Savings Bank." This agent testifies that J. C. Greeley had
authority to collect the rents of the property up to the
date of the sale, and that these rents he, Greeley, returned
directly to the Commissioner at Washington. According
to this record, Lockwood, the general agent for purposes of
the sale, and Greeley, then the agent for the collection of
the rents, was present at the sale. Lockwood, the general
agent, says that at the sale he stood within three feet of
Greeley, who announced the terms of sale to be " that the
purchaser or bidder would be required to make a deposit
of five hundred dollars," and " that the rents accruing
after April 1 would inure to the benefit of the purchaser."
The evidence establishes that Spratt bid in the land and
made a payment of five hundred dollars as required. At
the sale, Greeley stated also, that there was a defect or dis-
crepancy in the title which would be supplied or remedied
by the Commissioner within thirty days. What that de-
fect was the record does not disclose, but whatever it may
have been, there is nothing in this record to show that it
has been remedied. The evidence discloses further that
Greeley claimed to have authority to collect the rents up

to the sale, and Lockwood says that was the extent of his authority, thus showing that his announcement as to the future rents was correct.

It is also in proof that Greeley furnished Spratt with a list of the tenants, and that the defendant, Barnett, who was present at the sale and heard this announcement, after paying Spratt the rent for the month of April, advised Greeley of the fact, and that Greeley said " that he guessed or expected that it was all right," and Greeley himself admits that when the defendant here advised him that he had paid rent to Spratt for the month of April, that he replied : " I expect it would be all right, or words to that effect." It is thus apparent from Greeley's acts, however he may swear as to his agency, its nature and duration, that he in some way or other thought he represented the Commissioner at this time. This is also shown by his subsequent notice to the tenants not to pay Spratt the rents. In explanation he states : " I expected it would be all right, and the sale would be consummated by the acceptance of the deeds."

Greeley also states that the deposit of $500 has never been offered to be refunded, and that he " did not demand the rent for April or May, 1880, of Mr. Barnett until the last of May of that year," and that he then refused to pay him.

Spratt swears that after he declined to accept the title offered to him by Greeley, he (Greeley) ordered the tenants not to pay rent, and that Greeley, when he tendered this deed from the Commissioner, said that " the Commissioner had reflected on him for allowing me (Spratt) to have possession." The witness states that Greeley presented a letter from the Commissioner.

J. W. Smith, the officer in charge of the Signal Service office, who occupied a room in the building during April,

May and June, 1880, says that " by request of Greeley, I forwarded my account for rent for April to Washington, in the name of L. W. Spratt, and the draft came back payable to order of Spratt, and by Greeley's request I took it to Spratt for his endorsement; that he endorsed it and I then delivered it to Greeley, and that the account for the month of May was forwarded in the same way."

We have examined this record carefully several times to find any evidence of Greeley's authority to do anything concerning these rents after his announcement to the effect that the purchaser would be entitled to the rents after the first of April. Greeley testifies that his authority ended with the sale, and if his own statement is correct he is intermeddling with matters that do not concern him. The only thing we find in the record looking to any subsequent authority of Greeley in the matter is the letter of the Commissioner to him bearing date April 23, 1880, in which the Commissioner says : " Mr. Spratt is undoubtedly entitled to some record evidence that India Brown, formerly Mrs. Job Bass, and her husband represented the interest of Job Bass if he insists upon it, and we hope you may be able to furnish it." The Commissioner then states that independent of this he thinks that Spratt should be satisfied with the title as it stands, at the same time admitting that certain informalities in the chain of title exist. The Commissioner in this letter requests Greeley to " at once procure a proper deed of conveyance and forward it to us for execution, stating the intention to be that if Spratt, upon tender of the deed to him, refused to comply with the terms of the sale, to enforce compliance by proper legal proceedings, which will undoubtedly establish the validity of the title."

The clear and undoubted result of the testimony of Greeley himself and the evidence here is, that he, Greeley, had

no authority to notify tenants not to pay rent or to do anything else than to prepare the deed.

Upon the whole case our conclusion is that this general agent of the Commissioners having power to make a sale of this building, and being limited only in the matter of the manner of payment, and Greeley being the agent clothed with the power to collect rents, they were invested with full power to give the purchaser upon part payment of the purchase-money, the right to collect the rents until the admitted defect in the title could be remedied, and that they and their principals are estopped from claiming rent at the hands of a tenant who paid rent to such purchaser upon their announcement in the presence of the tenant that he, the purchaser, was entitled to it.

There is much said in this case about the matter of possession. We have purposely avoided saying anything about it. It has no necessary place in this action against Barnett. Whether the Commissioners hold the legal title here in trust for Spratt, a purchaser in possession after partial payment, or there is any other relation at law or in equity existing between them, and what it is, must be settled in a suit to which these alleged vendors and the vendee, Spratt, are parties. This defendant, under the peculiar circumstances of this case, cannot be made to suffer for payments already made, no matter what might be the result of such litigation.

Judgment affirmed.