JOHN J. KNOX, COMMISSIONER, &C., ET AL., APPELLANTS, VS. LEONIDAS W. SPRATT AND WILLIAM B. BARNETT, APPELLEES.

1. Where, under a contract for the sale of land, the purchaser enters into possession upon payment of five hundred dollars ($500) cash, his possession is lawful until the contract is off. Up to that time he is not liable for use and occupation to his vendor. Where, however, such purchaser declines to take such title as the vendor has, and the time for perfecting title as agreed upon in the contract has expired, and the contract cannot be performed for want of good title, and the purchaser declines to take such title as the vendor has, the purchaser must yield possession. If he does not, ejectment by the vendor will lie, and that without a return of the cash payment or a notice to quit.

2. Where the case made by the bill of the purchaser against the vendor for specific performance shows that the vendor cannot make a good title, and the purchaser does not ask to have decree for such title as the vendor may have, but only for a good title, specific performance not being in the power of the vendor, the court will not decree it.

3. Where the primary equity and relief sought by the purchaser is the performance of the contract of sale by which the purchaser is entitled to a good title from the vendor, the granting of an injunction restraining an action of ejectment by vendor against the purchaser or his tenant in possession, is dependent upon the right to specific performance of the contract. If this, the primary equity claimed, does not exist, an injunction should not be granted in aid of it, and if granted should be dissolved upon motion.

4. If the vendor is in a situation to obtain a title, is in such a situation that it is only necessary, for instance, to demand a deed after having paid the purchase-money at an administrator's sale of the subject of the contract of sale between him and the purchaser, or to do like acts clearly within his power and thus acquire a title, a court of equity will retain the bill, will require him to perform such acts, and will thereupon decree performance of the contract.

5. A conveyance to a grantor subsequent to his deed to another, conveying with warranty, inures to the benefit of his grantee. The

grantor's deed of warranty operates as a convenant real running with the land.

6. A highest bidder at a sale of land by a commissioner appointed by the County Court upon the petition of an administrator to sell the lands of an estate to pay debts, the bid of such bidder having been simply reported to the court, acquires no interest in the land, and there is no contract of sale which can be enforced until confirmation of the sale by the court. By his bid he simply becomes a party to and can be heard in the subsequent proceedings.

7. Where such bidder is a person named as creditor in the schedule of debts, and there has been an antecedent assignment of the debt, the assignee is not responsible for the bid. The assignee's interest is restricted to the application of the purchase-money to his debt. He acquires no interest or title in the land sold, nor has the agent of said assignee, independent of any other authority from the assignor, a right to act as agent of the assignor in making a bid.

8. The administrator of an estate is under no obligation, legal or equitable, to a person who is neither a debtor to nor creditor, nor heir nor vendee of the intestate, and who is a stranger endeavoring to acquire title to land claimed by the administrator to belong to the estate; such claim of the stranger to the land being by virtue of a contract of sale with a third party having no title against the estate.

9. The institution of a suit, as to persons not parties claiming independent rights, is effective only as a *lis pendens.* Whatever may be the ultimate decree therein rendered, it is not binding upon independent and other rights asserted between persons not parties to the litigation. *Quere:* Whether a court of equity will, in a suit by the heir against the administrator, to which the creditor of the estate is no party, arrest proceedings in the County Court looking to' a sale of lands of the estate to pay the alleged debt of the creditor, (which proceeding has progressed to a sale and report by a commissioner of a bid,) and transform the proceeding into one for the sale of land for distribution upon the ground that there is no debt due the creditor.

10. The relation of an attorney of the creditors of an estate is incompatible and inconsistent with the relations of administrator of the same estate. His duty to the creditor, his client, is to enforce the creditor's claim. His duty to the heirs is to resist the claim

if there is legal ground for so doing. The occupying these inconsistent relations by the same person, however, is no ground of equity in behalf of a third party to whom neither the administrator nor the estate is under any obligation, legal or equitable.

Appeal from the Circuit Court for Duval county.

This suit was instituted by Spratt and Barnett. They seek to enjoin two ejectment suits brought to recover possession of lot number 8 in block number 31 on the southwest corner of Pine and Forsyth streets in the city of Jacksonville, Florida, one of the suits being by Knox, Commissioner, &c., and the other by George Wheaton Deans as administrator *d. b. n.* of the estate of Foreman, both of the suits being against William B. Barnett, the tenant of plaintiff Spratt. The primary equity sought is a decree of specific performance of an alleged contract of sale of said lot by the Freedman's Savings and Trust Company to plaintiff, Leonidas W. Spratt. The right to the injunction is dependent upon and incident to the right to a decree for performance. The bill and exhibits constitute the case of the plaintiffs. Plaintiffs allege that Barnett is in possession of part of lot 8, as the tenant of his co-plaintiff Spratt; that on the 25th of March, A. D. 1880, the Freedman's Savings and Trust Company was in possession of the lot 8, claiming a fee simple title thereto by a chain of conveyances resting upon a deed of John P. Sanderson, as administrator *d. b. n.* of the estate of Jacob Foreman, in execution of an order of sale and a sale made by Elizabeth Foreman, then deceased, and the predecessor in office of J. P. Sanderson as administrator of said estate under proceedings in the probate court of Duval county; that said deed of said Sanderson purported to divest the title to said lot out of the estate; that upon said lot the said company erected valuable buildings; that on the 25th of March, 1880, the said company after due advertisement exposed the lot to

sale to the highest bidder for cash, or at the option of the purchaser, one-fourth cash and the balance in equal installments at six, twelve and eighteen months; that before the bidding was begun the company announced that there was some defect in the chain of title, which the company would remove within thirty days, and that said company would make a good and sufficient title to said lot to the purchaser; that the purchaser must make a payment down of $500, and would be at once let into possession of the premises, the balance to be paid by him when the title was made. If, however, the purchaser elected to defer the payments, the notes would bear interest from the day of sale; that at said sale said Spratt became the purchaser of said lot for $15,500, paid the company $500 cash and received a written receipt therefor as follows: Received of Col. L. W. Spratt five hundred dollars on account of purchase of Nat. Hall, or Freedman's Bank Building, on terms stated at sale to-day, lot 8, block 31, $500.

That Spratt announced his option to pay the whole purchase money as cash, and entered into possession of said premises; renewed to the tenants in possession a continuance of their leases; insured the property and had repairs made upon it; that the title to said lot was not perfected, nor was a deed tendered in accordance with the terms of sale; that upon investigation Spratt found the title defective and reported the fact to the company, and received on the 7th of May, 1880, a letter, which, so far as it referred to the title, was as follows:

"Office Commissioner of the
"Freedman's Savings and Trust Company,
"Washington, May 7, 1880.

" Messrs. Spratt & Cockrell:

"Gentlemen—On the matter of the sale of our Jacksonville property to Col. Spratt, we are very anxious to have

the transaction completed at the earliest possible moment. We still adhere to our belief that the title to the property is good, notwithstanding the informalities reported by you, and have therefore sent a deed to Mr. Greeley to be tendered to the purchaser. We trust the expected documents from Tensas parish will satisfy the purchaser, and that there will be no further delay in the transfer. But if still dissatisfied, we intend at once to institute the necessary legal proceedings for specific performance of the contract of sale. As far as we are concerned these proceedings will be in the nature of a friendly suit, and we trust that no unnecessary obstacles or delays will be interposed by the purchaser;" that said company was assured that such proceeding would be met in the friendly spirit indicated, and that although plaintiff, Spratt, suggested the method by which the difficulties pointed out by him might be removed, and promised his co-operation, the company did not institute such proceedings, but while retaining the purchase money notified plaintiff's tenants not to pay rent to Spratt, and forced him to sue his tenants for rents due, in which said suits, some of which have been tried, he has recovered judgment; that in said suits the said company by its attorney, the said Deans, resisted plaintiff's recovery upon the ground that Spratt was not the landlord ; that the said company also sued plaintiff, Barnett, one of Spratt's tenants, for rent of the same premises for which the ejectment suit sought to be enjoined was brought ; that the said suit was defended upon the ground that Spratt, and not the company, was entitled to the rent, and that this defense upon the facts hereinbefore stated was sustained by the Supreme Court of the State ; that subsequent to the writing of said letter the documents referred to as expected from Tensas parish were furnished your orator, Spratt, and are hereto appended marked exhibit A, the said company

claiming that it had perfected its title to the lot. This exhibit is the proceedings before the Judge of the Fourth Judicial District of Louisiana, by which the will of Job Bass was admitted to probate. Under its provisions one-half of his estate was to go to his wife, Judia Bass, and one-half to his mother, Elizabeth Foreman.

Plaintiffs aver, however, that the proceedings in the Probate Court upon which the said Sanderson as administrator d. b. n. of Jacob Foreman, deceased, claimed authority to execute and did execute the deed (which was the basis of the company's title) did not embrace said lot number eight, and that the legal title remained in said estate notwithstanding said sale.

Plaintiffs allege upon information and belief that the company for the purpose of perfecting its title procured George Wheaton Deans, its attorney in the matters growing out of the sale aforesaid to sue out of the Probate Court of Duval county, letters of administration d. b. n. of the estate of Jacob Foreman, the said Sanderson having before that time died, and that J. C. Greeley, the attorney in fact of said company, became the surety of the said Deans on his administration bond; that the said Deans as administrator thereupon caused a sale of said lot as the property of Jacob Foreman, deceased, to be made. The date of the sale was on the 6th of June, A. D. 1881. A copy of the proceedings is appended. It shows that the application was for the sale of this lot to pay debts upon the allegation of no personal property. The debts are alleged to be the " amount due Augustus E. Bass and Job Bass, sole heirs of Elizabeth Bass, deceased, as per probate account approved and filed in the records of the county of Duval, State of Florida, on June 16, 1856, and to which reference is hereby

made for date and evidence of said account of amount
due............................................$28,620
" Less amount received by Augustus E. Bass and
   " Jacob Bass from said estate................   6,555

   " Balance due............................$22,065"

The report of the commissioner is that the property was
" then sold to Augustus E. Bass and the heirs and legal
representatives of Jacob (Job) Bass, deceased," who, it will
be seen, were the alleged creditors, to pay whose debts the
sale was had. This report was returned and filed in the
Probate Court. There is no evidence in the record of the
sale showing any further action by any of the parties.
Nothing by which the bid by A. E. Bass and the heirs of
Jacob (Job) Bass was transferred to the company or any
other person.

As to this sale, and here arises the primary equity as
claimed by plaintiffs, it is alleged upon information and be-
lief that before the sale the said alleged debts upon which
the order of sale was obtained by said Deans were trans-
ferred to and became and are the property of the said com-
pany, and it is averred, not upon information and belief,
that one Lockwood, the agent of said company, bid off the
said property in the name of said creditors, but in fact for
said defendant company, and as a conclusion plaintiffs say
that said sale inures and was intended to inure to the com-
pany with the view of perfecting its title to said lot.

Plaintiffs allege also that the said alleged creditors had
theretofore made a warranty deed of conveyance of said lot
to the vendor, from whom the said company had immedi-
ately derived title and were thus bound by their said cov-
enants to make good the title of the said defendant com-
pany to said lot, " and so it is upon the payment of the

purchase-money bid for said lot as reported to said Probate Court, the said defendant company becomes vested with a good and sufficient title to said lot, and is thus placed in a position to make good its contract of sale to your orator, the said Spratt, as hereinbefore set up." As to this portion of the bill which alleges *no fact*, but simply states what will follow upon payment, &c., it is to be noted that there is no allegation of payment of the purchase-money, nor does the record of the proceedings disclose any such payment, or even an offer by the creditors or their alleged assignees to credit the amount of their bid upon the debt. The record shows a simple bid by the creditors.

Plaintiffs allege further that the heirs of Jacob Foreman have exhibited their bill, setting up that said alleged debt due A. E. Bass and the heirs of Job Bass, upon which said Deans obtained the order of sale, was not, when said application was made, and is not a valid or subsisting claim against said estate for which said administrator ought to be allowed a credit on settlement of his said administration; that said debt, if it ever had existed, had long since been barred or extinguished, and pray that said administrator be required to pay the purchase-money arising from the sale so made to the heirs and distributees of said Foreman, and to settle his accounts as such administrator. Plaintiffs, then as matter of argument, say: And so it is as the said heirs are not contesting said sale by said Deans as administrator, but claim the proceeds of said sale as heirs, the only cloud upon the title to said lot is the lien for the purchase-money of said last sale, and which purchase-money should in equity and good conscience be paid by said defendant company, who was in substance and in fact as hereinbefore set up the real purchaser at said sale.

Plaintiffs then allege by way of argument that whether the said alleged debt upon which the administrator's sale.

was made be adjudged in said suit to be a valid and sub-sisting debt, giving the said company as transferee of said debt the proceeds of said sale, or whether said debt be ad-judged invalid, thereby giving the proceeds of said sale to said heirs and distributees as the result of said suit by them, the cloud resting upon said title is equally removed and said company is in a condition *upon the settlement of said suit and the payment of said purchase-money as may be adjudged by this court in said suit* to make good its sale to Spratt.    (The ital-ics are by the court, and not in the bill.)

Plaintiffs allege that Deans claims possession of so much of the lot as is not in the actual possession of Spratt and his tenants, and is by the consent, collusion and acquiescence of said company admitted to be in such possession and en-titled to the rents.

Plaintiffs, upon information and belief, allege that the company and Deans are negotiating for a sale of said lot with the title acquired or sought to be acquired by such last administrator's sale to another and third party, with the purpose of throwing additional complications and em-barrassments about your orator in the assertion of his rights acquired under his contract of sale with the com-pany.

Plaintiff, Spratt, alleges that he has always been and is now ready and willing to comply with his said contract of sale, and he tenders and offers to pay the sum due upon his purchase as may be adjudged by this court upon his receiv-ing a good and sufficient title.

After several interrogatories, the particulars of which it is unnecessary to mention, plaintiffs pray process and for an order enjoining defendants, their agents and attorneys, from prosecuting the ejectment suits.

Plaintiffs also pray " *that upon the settlement of said admin-istration by said Deans, as administrator of Jacob Foreman's*

*estate, in said cause pending between said heirs and said administrator as aforesaid, and the payment of said purchase-money, and the divestiture of the title of said estate, and the acquisition of the same by said Freedman's Saving and Trust Company* (these italics are by the court); that said defendant company be restrained from the sale of said lot, or disposing of it, and be compelled specifically to perform the said contract of sale to the said Spratt; that he be quieted and established in his title to said lot; that said injunction be perpetuated, and for other and further relief," &c.

An order was granted enjoining further prosecution of of the ejectment suits, prohibiting defendants from interfering with the possession of plaintiffs, " and from selling or otherwise disposing of said lot until the court made an order to the contrary." Subsequent to the granting of this injunction, George Wheaton Deans for himself as administrator *d. b. n.* of Foreman, and as attorney for Jno. J. Knox, Commissioner, having before that time entered his appearance for the Freedman's Savings and Trust Company, moved the court to dissolve the injunction for the want of equity upon the face of the bill, filing with his motion the following affidavit:

Geo. Wheaton Deans, administrator *de bonis non* of the estate of Jacob Foreman, deceased, being duly sworn, deposes and says that he is the administrator *de bonis non* of the estate of Jacob Foreman, deceased, and one of the defendants in the above entitled cause; that he was appointed as said administrator by or through the procurement of no one; that he was appointed solely upon his own suggestion and petition, and that no sureties upon any bonds which he has given in connection with the duties of said office were procured by the above defendant company or any commissioner thereof, or with even their knowledge or assistance; that he has never been consulted or advised with

as to the sale of any property belonging to the estate of said Foreman as referred to in said bill, and if any such sale or contract of sale has been entered into by said defendant company it has been without the knowledge, collusion or any negotiation of, or with him, the said Deans, and that all his communications, either by letter or otherwise, with the said defendant company or commissioner thereof, has been solely as between attorney and client; that he has never obtained the possession of any property belonging to said estate by consent of, or collusion with, the said defendant company or commissioner thereof; that he has never had any correspondence with any person by the name of Ran, either orally or otherwise; that he has never collected any rents from tenants on any property belonging to said estate except as administrator as aforesaid, nor has he authorized any one to collect any such rents, except for and on account of him, the said Deans, as such administrator.

The motion to dissolve the injunction was denied, and from this order this appeal is taken.

*Geo. Wheaton Deans* for Appellants.

*Cockrell & Walker* for Appellees.

MR. JUSTICE WESTCOTT (after reading the foregoing statement of the case prepared by him) delivered the opinion of the court:

The primary equitable right claimed here by the purchaser is performance by the vendor, the Savings and Trust Company, or Knox, Commissioner of the contract of sale of this lot.

The injunction granted is necessarily based upon the view that the plaintiffs in the ejectment suits are endeavoring to

make an iniquitous use of the legal title to oust the tenant of the purchaser; that the purchaser has the equitable right to an investiture of the legal title in him as against the plaintiffs in these actions, and that such title can be acquired in the manner suggested by the facts and stated in the prayer of the bill. Whether specific performance can be decreed is the question therefore which determines the propriety of the injunction in this case.

The possession of Barnett, the tenant of the vendee Spratt, is for the purpose of this proceeding to be treated as the possession of Spratt, (although Spratt, the landlord, does not appear to be a party to the ejectment suits,) Practice Rules, 85; 3 Wait's Actions at Law, 82 to 86, and we therefore inquire what is the nature of this possession. The bill states that Spratt was the highest bidder at a sale had in March, A. D. 1880, of this lot, his bid being $15,-500; that the terms of sale were cash, or at the option of the purchaser, one-fourth cash and the balance in equal installments at six, twelve and eighteen months; that at the sale the vendor company announced that there was some defect in the chain of title which would be removed within thirty days; that said company would make a good and sufficient title to said lot to the purchaser; that the purchaser must make a payment down of $500; that he would at once be let into the possession, and that the balance was to be paid by him when the title was made; that the purchaser, Spratt, announced the wish to pay cash, and that after paying the $500 he was let into the possession of so much of the premises as is the subject of the ejectment suits against his tenant, Barnett. The purchaser thus in possession affirms that he has at all times been willing to pay the balance due upon the acquisition of a good title, or upon the performance by the vendor of his contract to make such title to him. The time for the payments as stipulated has

now passed, and the contract is off unless it can be per-
formed by Knox, as Spratt declines to take such title as
the vendor can give independent of this proceeding in
equity.    It is well settled that the stipulation here that the
purchaser might take possession is not equivalent in law to
a deed either in fee or for life, or for any definite time.    It
is merely executory, and looks to the passing of the legal
title at a future time.    Cowen, J., in Wright vs. Moore, 21
Wend., 234, says of such a possession: "At the utmost it
can do no more at law than create a *quasi* tenantcy at will.
Taken in its strict import it is a mere license."    Price vs.
Tuttle, 48 Barb., 153.    Without the agreement as to pos-
session the purchaser would be a trespasser.    Neither he
nor his tenant would be liable in an action of assumpsit for
use and occupation anterior to the time at which " the con-
tract went off," because during that time he is in possession
lawfully as purchaser, not as tenant, or in any way from
which an implied or express contract to pay for use and oc-
cupation would arise.    Little vs. Pearson, 7 Pick., 301 ; 1
Chitty on Contracts, 11 American Edition, 453 ; Sugden
on Vendors, 179, 180, 8 Am. Ed. ; Dwight vs. Cutler, 3
Mich., 567.    Lord Denman, C. J., in Winterbottom *et al.*
vs. Ingham, 7 Ad. & Ell. N. S., a case where the vendee of
an estate sold by auction had been suffered to enter upon
and hold the premises while the title was under investiga-
tion, and the contract had afterwards been determined by
want of title, says :  " The defendant certainly was consid-
ered, both by himself and the plaintiff, as purchaser not as
tenant, and the plaintiff cannot convert him into an occu-
pier liable to pay for his occupation by his own wrongful
act in not completing the contract of sale."    In such a case
when a contract is off by the fact that the vendor cannot
make the title and other facts necessary to the termination
of the contract, the vendor may maintain ejectment against

the purchaser. For whatever may be the relation of the purchaser in reference to his title as to strangers as between vendor and vendee, he or his tenant holds in subordination to the title of the vendor. This title he cannot deny in the action at law. While discussing this subject it may be well to refer to the allegation in the bill that a suit for use and occupation by the vendor here against Barnett, who was in as tenant of the purchaser, was unsuccessful. That case is reported in 18 Fla., 594. It is a matter of which we have actual judicial notice. The question of the right of possession as between vendor and purchaser was not there discussed. We expressly state in the opinion there rendered that we say nothing of it. Our conclusion was based upon a peculiar state of facts existing between the company and Barnett, by which we thought that the company was estopped from urging the claim for the rent there demanded.

This is the existing status as to the title proposed to be asserted in the action of ejectment by the commissioner, so far as it appears from the allegations of the bill. What is the relation of the plaintiffs in this bill to Deans, the administrator of Foreman, the plaintiff, in the action of ejectment brought by him against the purchaser's tenant? The allegations of the bill upon this subject are as follows: In paragraph number two (2) of the bill plaintiffs allege that the company, Spratt's vendor, were in possession of lot number 8, claiming a fee simple title therein derived " by a chain of conveyances mesne and immediate, resting upon a deed executed on the —— day of —— by one John P. Sanderson, as the administrator *de bonis non* of the estate of said Jacob Foreman, in execution of an order of sale, and a sale theretofore made by one Elizabeth Foreman, then deceased, and predecessor in office as administratrix of said estate, and the probate proceedings upon which said sale

was based. Said deed of said Sanderson purported to divest the title to said lot out of the estate of said Jacob Foreman, in whom the title had heretofore resided." In paragraph number six (6) of the bill plaintiffs aver "that it appears from an investigation of the proceedings in the Probate Court of Duval county upon which the said Sanderson, as administrator *de bonis non* of Jacob Foreman, deceased, claimed the authority to execute, and did execute the said deed of conveyance, and which purported to convey said lot and the title thereto out of said Foreman's estate, did not embrace said lot number 8, and did not authorize said conveyance, and the legal title remained in said estate notwithstanding said sale." The allegation of the bill is, therefore, that at the date of the contract to sell by the company to Spratt, the title was in the estate of Foreman, and this is the ground upon which Spratt, the purchaser in possession, is unwilling to take such title as the vendor can make. Unquestionably his contract was for a good title, and if he insists upon it a court of equity will decree performance if the vendor is in a condition to perform. If, however, it is apparent upon the case made by the bill that the vendor has no good title and that the court cannot control him to do acts by which he can acquire it or by which he can place himself in a position to perform his contract, the court will not decree him to perform an impossibility. If the bill disclosed the fact that the vendor or its successor in title, and obligation, was in a situation to obtain a title was in such relation of contract to the title that it was only necessary for him to act and could act, and that he was neglecting to do an act clearly within his power by which he might perfect it, a court of equity, we think, would control him to the performance of this act, and the performance of this contract. We do not mean by this that it would require him to purchase an out-

standing title. What we say is in view of the prayer of of this bill and in view of the facts in this case. If the vendor here occupies such relation to the proceedings in the Probate Court, by which the court at the instance of this administrator exposed this lot to sale and has received a bid therefor, as entitles him to a deed for the lot, then the court would compel him to apply for such deed and thus perfect his title. In order to save misapprehension we here state that it must not be inferred from what we have or do say that a court of equity would decree as against a purchaser even after confirmation specific performance of a contract of sale made by the County Court. See Andrews vs. Scotton, 2 Bland's Chy., 650; Attorney-general vs. Day, 1 Ves. Sr., 222.

In this view we examine the allegations of the bill. The claim of the plaintiffs is that by virtue of certain proceeding looking to the sale of this lot had by Deans, the administrator of Foreman since the contract of sale between the company and Spratt, and by virtue of relations existing between the company's vendor and the purchasers at said sale and the heirs, and in view of the relief prayed in a cause now pending in chancery between the heirs of Foreman and Deans, the administrator seeking a settlement of his administration, the court may retain this case and upon the rendition of a certain decree in this pending suit by which the vendor will acquire title, may decree performance.

The foundation of this claim arises out of the proceedings in the Probate Court at the suit of Deans, the administrator, looking to the sale of the lot, the title to which occasions this suit. As shown by the record of these proceedings, which is an exhibit to the bill, the administrator filed a petition seeking to sell this lot to pay a debt alleged to be due Augustus E. Bass and Jacob (we presume it

should be Job) Bass by the estate of Foreman in the sum of $28,620, that after an order of sale directing a commissioner to sell the lot, a sale was made and the commissioner reported that it was " sold to Augustus E. Bass and the heirs and legal representatives of Jacob (we presume it should be Job) Bass, deceased." This report was filed in the Probate Court. Nothing else has been done in the premises. The statute regulating this proceeding requires that upon such report the court " upon being satisfied that there is no improper conduct upon the part of the commissioner or upon the part of the executor or administrator, and after requiring of each of them an oath that they are not directly or indirectly the purchaser, and upon its being made to appear that the requirements of the order as to the sale have been complied with and that the property has brought a fair price, he shall pass an order confirming the sale and shall direct a deed of conveyance to be executed to the purchaser by the commissioner."

The statute requires also that " the administrator in such a sale as this, that is of real estate to pay debts where there is no personal property, shall, before receiving the money or the securities resulting from such sale, enter into bond with good security to be approved by the court, conditioned for the faithful application of the money to the payment of the debts and charges," &c. From this recital of the statute it is apparent that the status of a mere bidder at a sale is very far from being either at law or in equity of such a character as gives him the right by that fact alone to a deed for the property.

The commissioner here is the agent of the court to execute a power and the purchaser acquires no right to a deed for the land until the sale is confirmed. Halleck vs. Guy, 9 Cal., 196 ; Smith vs. Arnold, 5 Mason, 420 ; Mason vs. Osgood, 64 N. C., 468 ; Blossom vs. Railroad Co., 3 Wall.,

207 ; Forman and Dana vs. Hunt *et al.*, 3 Dana, 614 ; Williamson vs. Berry, 8 How., 546 ; Yerby vs. Hill, 16 Texas, 380 ; Yonge *et. al.* vs. Keogh, 11 Ill., 643 ; Harrison vs. Harrison, 1 Mar. Chy. Dec., 333.

Admitting that jurisdiction to that end exists in the county court until the sale is confirmed, the purchaser could not be compelled to pay the money. Anderson vs. Scotton, 2 Bland., 650, 461 ; Wagner and Marshall vs. Cohen, 6 Gill., 97. By his bid he becomes, it is true, a party to the proceeding, and can be heard in the subsequent proceedings, but he gets no title. Plaintiffs allege, however, that their vendor is the assignee of the debt of the creditor, for the payment of which the sale was ordered, the creditor being the bidder, and if we understand the position of Spratt here it is that by virtue of this relation his vendor, the company, is invested with some equity as to the title. It must be evident that no such equity exists as to the assignee of the debt of the creditor. His interest is in the debt for the payment of which the lot is to be sold. As assignee of the debt he has an interest in the purchase money and the matter of its application. He acquires no title. Even had the bid been transferred to him an application to the court and its action directing the deed to be made to him upon compliance with the terms of the statute in other respects is the usual method of proceeding. The rule upon this subject is that such a bidder may make a valid transfer of his bid to a third person before the execution of the deed, and the court upon the application of such assignee may direct the execution of a conveyance immediately to him by the commissioner subject to the equitable rights or liens of other persons as against the original purchaser, which had become vested previous to the assignment of his bid. Proctor vs. Farnam, 5 Paige, 614 ; Halleck vs. Guy, 9 Cal., 181.

According to the record, *Augustus E. Bass and the heirs of the other Bass* are the bidders, and it must be plain that the relation of an assignee of a debt due them, the bidder, by the estate is an entirely different person from his assignors clothed with no rights by virtue of which he can demand title. His interest is in the purchase money.

Another position taken in reference to this matter is that these bidders had, before they occupied this relation to this property, " made a warranty deed of conveyance to the vendor " (Sanderson) " from whom the said company had immediately derived title and were thus bound by their said covenants to make good the title of the said company to said lot." Paragraph 7 of this bill, admitting for the purpose of disposing of this question, " that conveyance to the grantor subsequent to his deed conveying to another in fee with warranty issues to the benefit of his grantee, and that the grantor is estopped from denying that he had no right at the time of his sale," (see Sugden on Vendors, 556 bottom page; top page 204, 8 Amer. Ed., where the extent and application of this rule is discussed,) it is not seen here that these bidders have acquired a good title. Nor do we see how it can be maintained that Spratt, the purchaser here, has an equity to compel these bidders to pay the purchase money and acquire the deed, for whatever may be their obligations resulting *from their bid*, such obligations exist with reference to the administrator, the heirs or the assignees of their debt, and nothing can result to their grantee with warranty *until they have acquired the title*, legal or equitable.

Until report and confirmation there is neither legal nor equitable title in the bidder. The title here is still in the estate, if it was there before these proceedings in the County Court. Plaintiffs allege the title to have been in the estate before these proceedings. Whether this is so or not we can-

54

not determine, because the proceedings in the Probate Court under which the deed of Sanderson, administrator *d. b. n.* of Foreman's estate, embracing this lot, was made, and which is the foundation of the title of the company as set forth in paragraph 2 of the bill, are not before us, and as to this matter we must act upon plaintiff's allegations.

And if it be true that the title is now in the estate we cannot see how Deans, the administrator *d. b. n.*, is under any obligation, legal or equitable, to Spratt as to this title. This bid is treated in two aspects by plaintiffs, first as a bid by A. E. Bass and the heirs of J. Bass. It is in this view that they claim that the title vested in the grantee of the Basses, and through him in the company. Of this matter we have just disposed. But it is also claimed that the bid here was "in fact for said defendant company." Now it is very evident that it cannot be both. We must treat it as one or the other. We have treated it as the record, and the distinct allegation that the company was the assignee of the debt requires, and that is that the Basses were the bidders. This we think is the case made by the bill. If it be that Lockwood, the agent of the company, bid it off in the name of the Basses, expecting that the company would control the matter by virtue of its relation as assignee of the debt, and that this relation authorized the use of the name of the Basses in the matter, his act in the name of the creditors is unauthorized.

The fact as shown by the report of the commissioner is that the bid whether authorized or not was the bid of the Basses. The company may have expected to get a title by crediting their bid with their debt. Even if the bid was their bid, and it was made under that apprehension, we are inclined to the view that the court should not confirm the sale requiring a cash payment against their protest.

This disposes of this case, except so far as the allegation

of the pendency of a suit in equity by the heirs against the administrator is concerned. The equity claimed here is not based upon the fact that such a suit is pending praying the relief asked, nor is it based upon any adjudication of the rights of the parties to that suit by the court in that case.

Spratt claims an equity by virtue of what he conceives will be the decree of that court in the pending case. To this case he is no party, nor does he occupy any relation to the parties therein, plaintiffs or defendants, by which he can control their action.

Again the relief prayed in the bill is for a decree for an alleged *devastavit* of the administrator, and the allegation of Spratt here is that the heirs do not by it seek to change the antecedent status of the company as to the title, as set forth in this bill by Spratt. Besides, to this bill neither Spratt nor the company are parties. The contest is between the heirs and the administrator, and whatever may be the result neither Spratt nor Knox are bound, as neither of them are parties. The heirs here may see proper to approve or assail the acts of this administrator in such manner as they choose, but their choice does not bind Spratt or Knox. Spratt has his own equities, and they are set up in this bill, and it is by them that his case must stand or fall. We cannot see that any effect can be given to this suit except as a *lis pendens*, which is simply notice of its existence and character.

Looking at the case in view of the allegations of plaintiffs in their bill here it seems to be an effort of the heirs to change an unperfected and pending proceeding in the Probate Court for the sale of real estate to pay debts to a proceeding for a sale for the purposes of distribution, and that upon the ground that no debt was due, and the creditor or his assignee is not a party to the suit. Would a court of equity do this?

We do not deem it improper here to state what we conceive to be the relations of Deans, the administrator, to Spratt, the purchaser, and to the company, the vendor, as they were the subject of considerable discussion in the argument of the case. As to the institution of the proceedings to sell in the Probate Court, Spratt alleges that the said defendant company, for the purpose of perfecting its title to said lot, as your orators are informed and believe, and upon such information charge the fact to be, procured the said George Wheaton Deans, an attorney of this court and the attorney of said defendant company in the matters growing out of said sale as hereinbefore stated, to sue out of the Probate Court letters of administration *d. b. n.* on the estate of Foreman, deceased; that J. C. Greeley, the agent of the company, became a surety on his administration bond, and that a sale of the lot was had. Now, so far as the purchaser, Spratt, is concerned, we can see no ground for any objection to this institution of this proceeding to perfect his vendor's title. That is precisely what his vendor contracted with him to do, and which he says he desires. In a subsequent portion of his bill, Spratt alleges, upon advice and belief, that the company and Deans are negotiating for a sale of said lot with the title acquired or sought to be acquired by the last administrator's sale to a third party with the purpose of throwing additional complications and embarrassments about him in the assertion of his rights acquired under the contract of sale. As to this contract of sale, Deans, the administrator, occupies no such relation to the vendee, Spratt, as imposes an obligation to protect his interest in any respect, and if there is anything in connection with the sale which would lead the administrator to oppose confirmation or otherwise affect the sale, or if he is aiding the vendor in a negotiation looking to a subsequent sale by the vendor, the only restraint

upon his action is such as arises from his duty to those he represents, or to whom he is under legal or equitable obligations, and Spratt is not embraced in this class.

If the administrator here is the attorney of the creditors, he has assumed a position of hostility to the heirs. If he represents the debt it is his duty not to contest it, which it is his duty to the heir to do, if there is legal ground for so doing, but it is not seen what this has to do with the rights of the vendee, Spratt. It may be the foundation of proceedings by parties having an actionable interest looking to his removal as administrator or for proceedings in the proper forum upon the ground that there is no debt for which the estate is bound, or it may be ground for action against him in reference to action in his office as an attorney. But such inconsistent relation, if it exists, (and it is not the purpose of this court to say that it does exist, and what is here said is only in reference to the argument made,) can certainly never be urged as a ground upon which any equity in favor of his clients is to be operative to invest them with the legal title to this lot for the benefit of Spratt, the purchaser.

A question which we have not discussed here, because we have deemed it unnecessary, is whether an order of the County Court confirming the sale is not necessary to take it out of the statute of frauds. Attorney-General vs. Day, 1 Ves. Sr., 221 ; Browne on the Statute of Frauds, 4 Edition, §265.

The order overruling the motion to dissolve the injunction is reversed, and the case will be remanded with directions to enter an order dissolving the injunction and for further proceedings.

A petition for rehearing was filed in this case, and the rehearing was denied.